UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WENDY D. TERHART, Individually and as Executrix
of the Estate of Charles D. Terhart,

                     Plaintiff,

      v.

NIAGARA MOHAWK POWER CORP.,
NATIONAL GRID USA SERVICE Co., Inc.,
and METROPOLITAN LIFE INSURANCE Co.,

                    Defendants.

**DECISION AND ORDER**
09-CV-1045S

## I. INTRODUCTION

Plaintiff, Wendy D. Terhart, individually and as executrix of the estate of her deceased husband, Charles D. Terhart, contends that Defendants National Grid USA Service Company, Inc. ("National Grid"),[1] her husband's former employer, and Metropolitan Life Insurance Co. ("Met Life") unlawfully withheld $86,000 in payments pursuant to her husband's life insurance policy (the "Policy" or "Plan"), which was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Presently before this Court is each Defendants' Motion to Dismiss. (Docket Nos. 25, 28.) For the following reasons, the motions are granted in part and denied in part.

---

[1]Terhart also names Niagara Mohawk Power Corp. as a defendant. National Grid is the successor in interest to Niagara Mohawk; thus for the sake of clarity and concision, this Court will refer to the two defendants collectively as "National Grid."

## II. BACKGROUND

### A.   Facts[2]

Before his retirement in April 2006, Charles Terhart was an employee at National Grid for more than 35 years. (Amended Complaint, ¶ 14; Docket No. 22.) As part of his compensation, Charles was entitled to a life insurance policy, which in this case was issued by Met Life. (Id., ¶¶ 15, 18.) Charles was under the impression – allegedly reinforced by both Defendants – that upon his death, his wife as the beneficiary, would be entitled to $106,000 in benefits. (Id., ¶¶ 20, 21.) In fact, by letter dated November 16, 2007 bearing the title "RE: Coverage Confirmation," which was sent after his retirement but before his death, Met Life informed Charles that he had $20,000 in basic life insurance coverage and an additional $86,000 in optional life insurance coverage. (Id., ¶ 21; Exhibit "A" of Amended Complaint.) But after Charles died on December 9, 2008, Met Life informed his wife, Wendy, that she was only entitled to $20,000 in benefits. Wendy commenced this litigation after repeated attempts, consistently rebuffed by Met Life, to secure the extra $86,000 and copies of the insurance plan documents. (Amended Complaint, ¶ 25.)

### B.   Procedural History

Plaintiff commenced this litigation on December 12, 2009 by filing a Complaint in this Court. (Docket No. 1.) With this Court's permission, Plaintiff filed her Amended Complaint on August 16, 2010.  (Docket No. 22.) Defendants separately moved to dismiss the Amended Complaint in September and October of 2010 (Docket Nos. 25, 28) and as

---

[2]The facts described herein are taken from Plaintiff's Amended Complaint. For the purposes of resolving the motions to dismiss, those facts must be accepted as true. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

a result, the Honorable H. Kenneth Schroeder, Jr.'s Case Management Order, which, *inter alia*, set a mediation schedule, was held in abeyance until the resolution of those motions (Docket No. 27).

## III.  DISCUSSION

### A.     Legal Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)  ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the

defendant is liable for the misconduct charged.  Iqbal, 129 S. Ct. at 1949.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  This examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 129 S. Ct. at 1950.  First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away.  See id.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

**B.      Met Life's Motion to Dismiss**

> **1.      Legal Claim**

Because Met Life informed Charles by letter that he had $106,000 in coverage, Wendy claims that it owes her this amount as the beneficiary of the Plan.

Met Life argues that it paid the correct amount of benefits pursuant to the Plan.  It notes that Charles did have the larger coverage when he was employed at National Grid, but when he failed to "convert" the optional coverage within 91 days after the effective date

4

of his retirement, as is outlined in the plan, the coverage was lost. The November 16, 2007 letter, it concedes, was simply an honest mistake. It further argues that any state law claims must be dismissed because they are preempted by ERISA.

Initially, because the Plan documents are an integral part of, and incorporated by reference in the Complaint, this Court can consider them on a motion to dismiss. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (all documents attached, incorporated by reference, and those upon which the complaint solely relies and which are integral to the complaint are properly considered).

So considered, the Plan states unequivocally that Charles' optional coverage – the extra $86,000, which the November 16 letter indicated he had – expired upon his retirement from National Grid. (See Plan, p. 36, attached as Exhibit "C" to the Affirmation of Linda Joseph; Docket No. 25.) The Plan further states:

> **DATE YOUR INSURANCE ENDS**
> If Your life insurance ends . . . you have the option to buy an individual policy of life insurance ("new policy") from Us during the Application Period in accordance with the conditions and requirements of this section.
>
> **When You Will Have the Option to Convert**
> You will have the option to convert when . . . Your employment ends.
>
> **Application Period**
> If You opt to convert Your Life Insurance Policy . . . we must receive a completed conversion application form from You within the Application Period . . . In no event will the Application Period exceed 91 days from the date Your Life Insurance ends.
>
> **Option Conditions**
> The option to convert is subject to . . . our receipt of Your Written Application for the new policy; and the premium due for such a policy.

5

(<u>Id.</u>)[3]

Wendy does not allege that this policy is fraudulent in any way,  that she or Charles applied to convert the policy, or that they made a premium payment on the new policy. Consequently, by the plain, undisputed terms of the Plan, any claim that she was legally due extra benefits is without merit and her claims in this regard, including those for declaratory judgment and breach of contract, are dismissed. To the extent that Wendy's claims for bad faith and breach of fiduciary duty are premised on the Defendants' refusal to pay the extra benefits, which by law they had no obligation to pay, those claims are also dismissed. Further, Wendy's claims, to the extent they are premised on state law, are preempted by ERISA. <u>See</u> 29 U.S.C. § 1144(a) (preempting any state laws that "relate to" a benefit plan); <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 47, 107, S. Ct. 1549, 95 L. Ed. 2d 39 (1987) (finding state contract and bad faith claims preempted and affirming that state law "relates to" a benefit plan if it has a connection with, or refers to such a plan).

## 2. Equitable Claim

The result reached above does not completely resolve Wendy's claim – she also alleges that she detrimentally relied on the November letter and therefore Met Life should be bound by its terms. This is essentially an estoppel argument.  As the Supreme Court has noted, "[T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse and [her] reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." <u>Heckler v. Cmty. Health Servs. of</u>

---

[3]As indicated in the Plan, "Us" refers to Met Life and "You" refers to Charles Terhart.

Crawford Cnty. Inc., 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984) (considering the doctrine of equitable estoppel).

Met Life argues that this claim is governed by ERISA law, under which the theory of estoppel requires the proponent of the doctrine to demonstrate (or in this case allege) that she was subject to "extraordinary circumstances." See Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 109 (2d Cir. 2008) ("Promissory or equitable estoppel is available on ERISA claims only in 'extraordinary circumstances.'"). Met Life goes on to note that an allegation that an insurer acted with a deliberate intent to mislead may qualify as an "extraordinary circumstance". See Devlin v. Transp. Commc'ns Int'l Union, 173. F. 3d 94, 101-02 (2d Cir. 1999). But lacking such an allegation, argues Met Life, the claim should be dismissed.

Wendy's response is twofold. First she argues that the Second Circuit has not  yet defined the contours of the "extraordinary circumstances" prong, and therefore it would be improper for this Court to rule as a matter of law that these facts do not meet that standard. See id. (declining to elaborate on what constitutes "extraordinary circumstances," but finding the facts in that case, where the defendants possessed no intent to misled, did not justify such a finding). Second, she argues that her estoppel claim is not governed by ERISA.

Because this Court agrees with Wendy's second proposition, it need not discuss her first argument. Indeed, Met Life itself appears to concede, as it must, that post-employment policy disputes are not governed by ERISA. See Arancio v. Prudential Ins. Co. of Am., 247 F. Supp. 2d 333 (S.D.N.Y. 2002) (finding that the insured had an independent relationship, not governed by ERISA, with his insurer after he left his employer and converted his

policy). That scenario, however, differs from claims arising from an employee's right to take out a conversion policy in the first place, which the Second Circuit has conclusively established is governed by ERISA. <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1158 (2d Cir. 1990). Neither party points to any precedent for the present situation: where there is a dispute not about the right to take out a conversion policy, nor about the conversion policy itself, but about a right sounding in equity that by implication concerns a conversion policy.

Yet, despite the apparent novelty of this case, this Court has no trouble concluding that ERISA should not preempt state law in this situation. In the end, this is a dispute about a conversion policy. Met Life 's relationship with Charles, for the purposes of ERISA ended on July 1, 2006, the date his application period expired.  In November of 2007, well after Charles retired and the application period expired, Met Life represented to him that he in fact did have the optional, converted  policy. This litigation is based on that letter, not the ERISA governed plan, from which Wendy has already been paid insurance benefits.

Moreover, the rationale behind the principle that ERISA should govern a dispute about an employee's right to convert his policy is inapplicable here. The court in <u>Howard</u> reasoned that ERISA preempted New York State law because ERISA mandated certain notice provisions in this regard whereas the state statute "set[] forth a different scheme for providing notice of plan benefits." <u>Id.</u> at 1158. Because of this conflict, the court held that ERISA preempted state law. Here, there is no conflict. ERISA does not (nor could it) address the question before this Court because the dispute does not concern an employee benefit plan, but rather the existence of a converted plan. Therefore, Wendy's estoppel claim should be adjudicated under state law principles, not ERISA.

Thus the question turns to whether her claim is sufficient under the non-ERISA standard, where she is not required to allege "extraordinary circumstances." To state such a claim under New York law a plaintiff must allege (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an injury to the party to whom the promise was made by reason of the reliance. Mendez v. Bank of America Home Loans Servicing, LP, --- F. Supp. 2d ---, No. 11-CV-1516, 2012 WL 112506, at *13 (E.D.N.Y.  Jan. 14, 2012) (citing Braun v. CMGI, Inc., 64 Fed. App'x 301, 304 (2d Cir. 2003)).  Wendy, as executrix of Charles' estate, has alleged that Met Life made a promise on which Charles detrimentally relied. As such, Met Life's motion is denied.[4]

Met Life argues that Charles' reliance was not reasonable because he had constructive knowledge of the Plan and its clear terms requiring him to convert after retirement. But it cites no authority from this Circuit for its proposition that Charles should be charged with constructive knowledge. See, e.g., Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899, 908 (9th Cir. 2009). More importantly, the letter in question was clearly sent in response to Charles' inquiry regarding his coverage amounts. It stated, "Dear Charles: we have received your request for confirmation of coverage." It was entitled "Coverage Confirmation." This Court will not rule that, as a matter a law, it was unreasonable for Charles to rely on a document from his insurance provider that was sent

---

[4]The Amended Complaint attributes the reliance to "Plaintiff," not Charles specifically. Met Life takes issue with this, arguing that Wendy, as "Plaintiff" could not have relied on the letter because it was addressed to Charles and it was his, not her, policy. But the executrix of an estate can bring an action on behalf of a deceased, and this Court will consider "Plaintiff" in this context to mean Charles. Under the liberal, notice pleading standards of Fed. R. Civ. P. 8, this Court is satisfied that Met Life has suffered no prejudice by the distinction it points out.

specifically in response his request for confirmation of his insurance coverage.

### 3.      Failure to Provide Plan Information[5]

Wendy claims that despite her requests, Met Life failed to produce Plan documents and provide her with Plan information and that such acts violated Met's Life's fiduciary duty. ERISA requires that the plan administrator provide "a set of all currently operative, governing plan documents." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 84, 115 S. Ct. 1223, 131 L. Ed. 2d 94 (1995). Indeed, the Second Circuit has held that failure to respond to requests for information can result in a breach of fiduciary duty. Estate of Becker v. Eastman Kodak Co.,120 F.3d 5, 10 (2d Cir. 1997) ("[W]e conclude that Kodak breached its fiduciary duty to provide Becker with complete and accurate information about her retirement options."). Met Life concedes that it is a Plan fiduciary (see Met Life's Memorandum of Law, p. 15; Docket No. 25), and Wendy has asserted that it refused to provide her with pertinent information; she has thus adequately pled this claim.

### D.      National Grid's Motion to Dismiss

National Grid also does not dispute that it is a Plan fiduciary, but it argues that requests for information must be in writing and that lacking such an allegation, the claim should be dismissed. National Grid correctly notes that requests do have to be in writing under § 104 of ERISA. See 29 U.S.C. § 1024(b)(4) ("The administrator shall, *upon written request* of any participant or beneficiary . . .") (emphasis added). But it points to no case where a court required the plaintiff to plead this element. In other words, while a plaintiff must show that she made written requests to succeed on a claim under § 104, National

---

[5]Of course, this claim must relate to the underlying Plan that Charles had with Met Life. Because he never converted this plan after his retirement, Met Life had no fiduciary duty to provide documents for a plan that did not exist. This distinction applies to National Grid as well.

Grid supplies no authority indicating that this fact must be pled. In fact, "the Federal Rules of Civil Procedure do not require a plaintiff to detail in the complaint all of the facts upon which a claim is based." Mendez, 2012 WL 112506, at *5. Further, the Becker court, considering a slightly different requirement, adopted the holdings of other circuit courts and held that "ERISA fiduciaries must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits." 120 F.3d at 8. It added no requirement that the request be in writing. Wendy has alleged that she sought Plan information from Met Life and National Grid and was met with only refusals. This sufficiently states a claim.[6]

However, none of the other allegations against National Grid can survive. Wendy's claims for breach of contract, declaratory judgment and bad faith are dismissed for the same reasons as outlined above. Further, there is no allegation that National Grid played any role with regard to the November 16 letter, which, to reiterate, was sent only after Charles had retired from National Grid. Although Wendy does generally allege that "Defendants" (possibly including National Grid) "told" him that he had $106,000 in coverage, such a bare, factually deficient allegation does not "posses enough heft" to entitle Wendy to relief. See Twombly, 127 S. Ct. at 1966. This lone accusation lacks the factual foundation that could make it plausible. See Iqbal, 129 S. Ct at 1945. Therefore, Wendy's estoppel claim, proceeding against Met Life, must be dismissed as against National Grid.

---

[6]This Court has also considered and found without merit National Grid's other argument that the factors courts consider in applying 29 U.S.C. 1132(c) must be pled by the plaintiff. Its only cited authority in this vein is Campanella v. Mason Tenders' District Council Pension Plan, 299 F. Supp. 2d 274 (S.D.N.Y. 2004), which granted the defendant's motion for summary judgment, not a motion to dismiss.

**IV. CONCLUSION**

For the reasons discussed above, Defendants' motions are granted with respect to all claims except those for promissory estoppel against Met Life and for breach of fiduciary duty against Met Life and National Grid.

**V. ORDERS**

IT HEREBY IS ORDERED, that Metropolitan Life Insurance Co.'s Motion to Dismiss (Docket No. 25) is GRANTED in part and DENIED in part.

FURTHER, that National Grid USA Service Co., Inc. and Niagara Mohawk Power Corp.'s Motion to Dismiss (Docket No. 28) is GRANTED in part and DENIED in part.

FURTHER, that the parties are instructed to confer with the Hon. H. Kenneth Schroeder, Jr.  regarding reinstatement of the Case Management Order signed June 8, 2010.


Dated:        February 5, 2012
              Buffalo, New York


                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              Chief Judge
                              United States District Court

12